# Exhibit 1

25-000787-CZ FILED IN MY OFFICE Cathy M. Garrett WAYNE COUNTY CLERK 1/17/2025 10:44 AM Jacqueline Ruff

STATE OF MICHIGAN
IN THE 3RD JUDICIAL CIRCUIT COURT
FOR THE COUNTY OF WAYNE

HENRY WILLIAMS, Executive Director of the Michigan Gaming Control Board in his official capacity as Racing Commissioner of Michigan,

    Plaintiff,

v

CHURCHILL DOWNS TECHNOLOGY INITIATIVES COMPANY (D/B/A TWIN SPIRES),

    Defendant.

Case No. 25-_____-CZ

HON. _____

---

Gerald A. Whalen (P44084)
James P. Kennedy (P80244)
Assistant Attorneys General
Attorneys for Plaintiff
Michigan Department of Attorney General
Alcohol and Gambling Enforcement Div.
2860 Eyde Parkway
East Lansing, MI 48823
(517) 241-0210

---

### VERIFIED COMPLAINT IN SUPPORT OF EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION

*In response to a Summary Suspension issued pursuant to the laws of the State of Michigan, Churchill Downs has filed a Complaint in the U.S. District Court - Western District of Michigan challenging the constitutionality of a state licensing requirement. To date, it has not sought injunctive relief. Such filing equates to a collateral challenge to a pending administrative action that should be barred on procedural grounds.*

The Executive Director, by his attorneys, Gerald A. Whalen & James P. Kennedy,

Assistant Attorneys General, files this verified complaint in support of motion for

temporary restraining order, stating as follows:

1. Plaintiff Henry Williams is the Executive Director of the Michigan Gaming Control Board (Executive Director) and is the person authorized for the regulation, including licensing and enforcement of the Horse Racing Law of 1995 (Racing Act), 1995 PA 279, MCL 431.301. Mr. Williams' office is located at 3602 W. Grand Blvd., Detroit, Michigan 48202.

2. Defendant Churchill Downs Technology Initiatives Company d/b/a Twin Spires (Defendant Churchill or Churchill), is licensed as a third-party facilitator in the State of Michigan to assist Northville Downs (track license applicant and a race meeting applicant) by operating an out-of-state internet wagering operation for horse racing.

3. Pursuant to Executive Order No. 2009-45, the Office of Racing Commissioner and the position of Racing Commissioner were both abolished and those powers and duties were transferred to the Executive Director of the Michigan Gaming Control Board, including but not limited to licensing and regulating pari-mutuel wagering.

4. Pursuant to Section 3 of the Racing Act, MCL 431.303, the Executive Director is authorized to oversee the regulation of horse racing and maintain jurisdiction of it in the State of Michigan. Included in those powers and duties are the powers necessary and proper to implement and enforce the Racing Act.

5. A person shall not hold or conduct, or assist, aid, or abet in holding or conducting a race meeting within the state where live or simulcast horse races with pari-mutuel wagering on the results of horse racing for a stake, purse, prize, share, or reward is conducted, unless the person and the racetrack at which the gaming activity is conducted are licensed by the Executive Director. MCL 431.315(3).

6. Pursuant to Section 8 of the Racing Act, MCL 431.308, as applicable to this matter, the Executive Director may issue a race meeting license, a track license, and a third-party facilitator license.

7. A race meeting license is issued annually for the following year to persons to conduct live horse racing, simulcasting, and pari-mutuel wagering on the results of live and simulcast horse races at a licensed race meeting. MCL 431.308(1)(b). Those activities are conducted at a location that holds a track license.

8. As a condition of licensure, an applicant for a race meeting license must identify the licensed racetrack at which the proposed race meeting will be held. MCL 431.310(1)(a). Absent the licensed track, the foundation does not exist for either a race meeting or a third-party facilitator to operate. MCL 431.315(3).

9. Northville Downs, LLC (race meeting applicant/licensee) applied for a race meeting license. The application for a race meeting license was incomplete, because the application was for a race meeting at the proposed location of 1350 N. M-37 Hwy, Hastings, MI 49058—which is not a licensed racetrack.

10. In lieu of denying Northville Downs' race meeting application, the Executive Director determined that issuing a conditional race meeting license was necessary to promote the safety, security, growth, and integrity of all horse racing, pari-mutuel wagering on the results of horse races, and simulcasting conducted at licensed race meetings. Accordingly, on October 30, 2024, an order granting a 2025 race meeting license and 2025 simulcast permit (Order) was issued. The effective date of the Order is conditioned on the granting of a track license at 1350 N. M-37 Hwy, Hasting, MI 49058.

3

11. A track license is issued to persons to maintain or operate a racetrack at which race meeting licensees may conduct licensed race meetings in this state. MCL 431.308(1)(c).

12. On September 23, 2024, an application for a new track license was received from Northville Downs, LLC (track license applicant and a race meeting applicant). The application for a track license was materially incomplete. In lieu of an initial denial, discretion was exercised to issue two letters, dated October 17, 2024, and November 8, 2024, notifying track license applicant of deficiencies in the application. As of this date no track license has been issued.

13. Third-party facilitator licenses are issued to persons that have contracts with a race meeting licensee to facilitate wagering on live and simulcast wagering by which the executive director sets the terms and conditions.
MCL 431.308(1)(c).

14. Pursuant to § 8(1)(d)(i) of the Racing Act, Churchill had to contract with a race meeting licensee, here Northville Downs. The contract provides that "this agreement, including all matters of construction, validity, and performance, shall be governed, construed, and enforced in accordance with the laws of the State of Michigan. The parties agree to comply with all Michigan laws, including, but not limited to, the Michigan Horse Racing Law of 1995, as amended, its rules, and orders of the Executive Director. Venue of any action arising out of this Agreement shall be heard in an applicable state court of Michigan, and absent jurisdiction in such court, then in the applicable federal court of Michigan."

15. While seeking initial licensure in the State of Michigan, in a written letter to the office of the Executive Director, dated September 3, 2020, Churchill represented to

4

the State of Michigan that it would not accept wagers from persons located within the State of Michigan without a Third-Party Facilitator License.

16. Churchill holds a third-party facilitator license and applied for renewal of this license for 2025 on November 26, 2024.

17. Because a track license has not been issued, no live racing or simulcasting (including pari-mutuel wagering contracted through third-party facilitators) is permitted. On December 23, 2024, all licensed third-party facilitators were notified to cease all account wagering with Michigan account holders on January 1, 2025, at 12:00 a.m. On December 30, 2024, an email was sent to all licensed third-party facilitators requesting written verification by January 3, 2025, that account wagering had ceased with Michigan accounts holders as of January 1, 2025.

18. On December 31, 2024, Churchill notified the MGCB that it was not going to cease its account wagering for Michigan accounts. On January 3, 2025, the MGCB responded to Churchill advising that if Churchill continued to conduct unauthorized internet wagering in Michigan, then Churchill would be in violation of Michigan law, and would subject itself to administrative, civil, and criminal penalties as well as jeopardize its future suitability for licensure.

19. On January 6, 2025, Churchill (by Corporate Counsel Andrew Silver) verbally advised the MGCB during a Teams call/meeting (including Chief of Staff Kurt Steinkamp, and Deputy Directors Dave Murley & Tina Alagna) that Churchill was continuing to accept pari-mutuel wagers from Michigan residents despite having received multiple demands from the MGCB to cease operations in Michigan. Additionally, in a response to a question posed to him about the request for verification that account wagering had ceased with Michigan accounts holders as of January 1,

2025, Mr. Silver responded that said verification was contained in his December 31, 2024 letter wherein he advised that Churchill was not going to cease its account wagering for Michigan accounts.

20. Because Churchill failed to cease all account wagering with Michigan account holders effective January 1, 2025, at 12:00 a.m., Churchill has acted contrary to the Racing Act and poses a threat to the public interest and the integrity of wagering in Michigan.

21. Based on Churchill's representation that it would not comply with Michigan law and the Executive Director's instructions, and consistent with section 92(2) of the Administrative Procedures Act, MCL 24.292(2), where the public health, safety, or welfare require emergency action, the office of the Executive Director issued an Order of Summary Suspension on January 7, 2025.

22. The Order of Summary Suspension ordered that Churchill's third-party facilitator license was summarily suspended in accordance with MCL 431.307(3) and MCL 24.292(2) and the matter was filed with the Michigan Office of Administrative Hearings and Rules which scheduled a hearing for January 21, 2025.

23. A summary suspension is not optional to the aggrieved party but rather is an immediate suspension pending a prompt hearing. MCL 24.292(2). Churchill, however, has defied the Order of Summary Suspension and continued to conduct internet wagering on horse racing.

24. Churchill has not sought to take state administrative or judicial action but rather has filed a complaint in the U.S. District Court - Western District of Michigan challenging the constitutionality of a state licensing requirement. To date, it has not sought injunctive relief but has stated that such a filing will be made this week.

25. The federal filing equates to a collateral challenge to a pending administrative action that should be barred on procedural grounds.

26. Despite receiving the Order of Summary Suspension, and in direct violation of that order, Churchill continues to offer and accept wagers from persons located in the State of Michigan.

27. Pursuant to MCL 431.307(3), sanctions including, but not limited to, revocation or suspension of a license, exclusion from racetrack grounds, or a fine of not more than $25,000.00 for each violation of the Racing Act or a rule promulgated under the Racing Act committed by a licensee or other person under the Racing Act may be issued.

28. A licensed third-party facilitator may be fined or have its licensed suspended or revoked if it fails to comply with the law or poses a threat to the public interest or the integrity of racing or wagering in Michigan. Mich Admin Code, R 431.5040.

29. The Legislature has vested the Executive Director with the authority and responsibility to identify and work to redress situations that threaten the public health, safety, and welfare. The Executive Director acted upon that responsibility by issuing the Order of Summary Suspension of Churchill's Third-party facilitator license. By Churchill's defiance of that Order, it is breaking the law. MCL 431.327; MCL 431.329; MCL 431.334.

30. A person shall not participate in racing involving wagering of any kind except as permitted under the Racing Act. MCL 431.327.

31. A person who willfully aids, assists, or abets the violation of Racing Act or the rules promulgated under the Racing Act is guilty of a misdemeanor punishable by a

7

fine of not more than $10,000.00 or by imprisonment for not more than 1 year, or both. For this section, each day of racing in violation of this act constitutes a separate offense. MCL 431.329.

32. In addition to the penalties provided in sections 29, 30, 31, 32, and 33 of the Racing Act the holder of a license who violates section 29, 30, 31, 32, or 33 is subject to penalties prescribed by the racing commissioner that may include the suspension or revocation of the person's license.

33. Churchill's continuing violations of operating while its Michigan license is under an Order of Summary Suspension, in total disregard for the laws of the State of Michigan, is a violation of the Racing Act and by extension, the Penal Code. Churchill's blatant defiance constitutes an imminent threat to the public health, safety and welfare. Additionally, it causes irreparable harm to the regulatory powers and duties of the Executive Director.

34. Upon information and belief, continued operation by Churchill may encourage other third-party licensees, and those persons not licensed, to violate the Racing Act by conducting internet wagering on horse racing.

35. Plaintiff moves pursuant to MCR 3.310 for injunctive relief, requiring Defendant Churchill, its agents and employees, and all persons with notice, to cease and desist all business operations and activities of Churchill to persons located in the State of Michigan and to direct Churchill to take immediate steps to adhere to the Order of Summary Suspension issued pursuant to Section 92(2) of the Administrative Procedures Act.

36. The Executive Director moves pursuant to MCR 3.310(B) for a temporary restraining order, without notice to the Defendant, because continued immediate and

irreparable injury will result from any delay required to effect notice, because every day that Churchill continues operations and/or fails to obey the laws of the State of Michigan and the Order of Summary Suspension, the Executive Director is stripped of his regulatory powers and duties which causes irreparable harm to the integrity of the regulation of the horse racing industry in Michigan including the pari-mutuel system of wagering in Michigan.

37. By his signature below, the attorney for the Executive Director attests that any attempt at notice is not required because Defendant Churchill is already aware of (and has intentionally and blatantly failed to cooperate with) the Executive Director's instructions and directions as to how a third-party facilitator licensee must operate pursuant to the Racing Act.

38. By his signature below, the attorney for the Executive Director attests that any attempt at notice is not required because Defendant Churchill is already aware of (and has intentionally and blatantly failed to cooperate with) the Executive Director's Order of Summary Suspension, and Defendant's continued operation increases the risks to the public health, safety and welfare by the weakening of the regulation of the horse racing in Michigan including the pari-mutuel system of wagering in Michigan.

39. By his signature below, the attorney for the Executive Director submits this certification pursuant to MCR 3.310(B)(1)(b) that no effort has been made to give notice to the adverse party for the reasons stated in ¶¶ 38-39 and here. The adverse party has ignored a summary suspension requiring it to discontinue its operation with the brazen representation that it will not cease operations in total disregard for the laws of the State of Michigan. Injunctive relief is the only option for the Applicant Executive Director as he requests this Court's assistance to order the licensee to cease operations.

WHEREFORE, Plaintiff Executive Director of the Michigan Gaming Control Board respectfully requests that this Honorable Court:

A. Issue a Temporary Restraining Order, without notice to the Defendant Churchill Downs Technology Initiatives Company d/b/a TwinSpires, requiring Churchill, its agents, employees, and all other persons with notice of the Order to cease all business operations in the State of Michigan until the summary suspension is lifted in a subsequent order.

B. Order Defendant to appear and show cause why an Injunction should not be issued requiring Defendant Churchill, its agents, employees, and all other persons with notice of the Order, to cease all business operations in the State of Michigan until the summary suspension is lifted in a subsequent order; and

C. Grant the Executive Director such other and further relief as may be required, including an award of costs and attorney fees incurred.

## VERIFICATION /CERTIFICATION

I, Kurt Steinkamp, being first duly sworn, depose and say that I am the Chief of the Staff for the Michigan Gaming Control Board and assist the Executive Director in his duties, and that the statements contained in this Verified Complaint for Injunctive Relief, and Motion for Temporary Restraining Order are true to the best of my knowledge, information, and belief.

s/ Kurt Steinkamp
Kurt Steinkamp
Chief of the Staff
Michigan Gaming Control Board

Subscribed and sworn to before me, a Notary Public, this 16th day of January, 2025.

s/Susan M. Womble
Susan M. Womble

        Notary Public, Clinton County, Michigan
        Acting in Ingham County, Michigan
        My Commission Expires: 04/01/2025

        Respectfully submitted,

        s/Gerald A. Whalen
        Gerald A. Whalen (P44084)
        James P. Kennedy (P80244)
        Assistant Attorneys General
        Attorneys for Plaintiffs
        Michigan Department of Attorney General
        Alcohol and Gambling Enforcement Div.
        2860 Eyde Parkway
        East Lansing, MI 48823
        (517) 241-0210

Dated: January 16, 2025